EDITH BROWN CLEMENT, Circuit Judge,
Dissenting:
Summary judgment is problematic for three reasons. First, a genuine issue of material fact exists as to whether WMI removed Habets as an officer. Second, the KESP unambiguously supports Ha-bets’s position. Third, the extrinsic evidence compels Habets’s interpretation of the KESP.

A. Genuine Issue of Material Fact

A glaring issue of material fact exists as to whether WMI removed Habets as an officer. According to WMI’s interpretation of the KESP, WMI was authorized to unilaterally terminate Habets’s KESP rights because WMI removed Habets as an officer prior to terminating the KESP in its entirety. That removal, WMI alleges, occurred during the regional consolidation. Thus, even accepting WMI’s interpretation of the KESP, WMI may only succeed on summary judgment if the evidence establishes the factual conclusion that WMI removed Habets as an officer during the regional consolidation.
The evidence makes clear that this material fact is not established. Undisputed evidence exists that Habets’s title, employment responsibilities, and compensation remained the same after the regional consolidation. Furthermore, WMI fails to produce any evidence that Habets was removed in accordance with WMI’s bylaws. The record contains no documentation of any Board resolution to remove him; no minutes of a Board meeting where the alleged removal was discussed; no Board vote on the alleged removal; and no documentation that Habets received notice of the alleged removal. The only evidence that WMI relies on to establish this material fact is an annual report that does not list Habets as an officer. This evidence alone is insufficient to conclusively establish on summary judgment that the Board did in fact remove Habets as an officer in conformity with bylaw procedures.

*386
B. Plain meaning of the KESP

The KESP does not unambiguously provide WMI the ability to terminate Habets’s KESP rights without his consent. Section 1.1.4 defines “Participant” to include “officers of the Company ... who are listed on Exhibit 1.... ” Section 2.2 states that “the Company shall not amend, terminate or suspend the Plan or any provision thereof ... without the prior written consent of any Participant adversely affected thereby.” These sections imply that if the KESP incorporates Exhibit 1 as a provision of the KESP, then Section 2.2 prohibits WMI from removing a Participant by amending Exhibit 1 without that Participant’s consent.
Delaware caselaw compels the conclusion that Exhibit 1 is a KESP provision. “Where a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it, the two will be interpreted together as the agreement of the parties.” State ex rel. Hirst v. Black, 83 A.2d 678, 681 (Del.Super.1951). Here, the KESP expressly refers to Exhibit 1, and makes it a condition of participation in the KESP. As an incorporated instrument, Exhibit 1 is a provision of the KESP. Exhibit 1 is thus subject to Section 2.2’s statement that before the Board can amend “any provision” of the KESP, the Board must obtain “written consent of any Participant adversely affectedThus, any Participant adversely affected by an amendment to Exhibit 1 must provide written consent before that amendment is adopted.
The majority opinion suggests an alternative interpretation of the KESP that results in the rights vesting when a change in control occurs. This interpretation fails for two reasons. First, at oral argument, WMI specifically confirmed that a Participant’s rights vest upon being listed on Exhibit l.[1] Second, Section 1.1.4 provides that an employee must be made a Participant “prior to any Change in Control.” Participant status, ie., having rights under the KESP, must therefore occur before a change in control. Thus, KESP rights vest before a change in control; they vest when the employee is listed on Exhibit 1. The majority’s interpretation is flawed.
Contrary to the majority’s holding, interpreting the KESP to require consent of a Participant before termination is consistent with the plain meaning of Section 1.1.4. Section 1.1.4 provides that “additional officers” may obtain Participant status as the Board “may from time to time specify [an officer] as being a Participant .... ” In specifying that an employee is a Participant, the Board implicitly specifies that other employees — in particular, those employees that the Board fails to specify as being Participants — are not Participants. This implicit specification of employees that are not Participants does not imply, however, that by specifying an employee as being a Participant, the Board has the ability to specify that Participants can lose their Participant status. That is, the implicit conclusion that employees not named as Participants are not Participants is the extent to which the plain meaning of Section 1.1.4 allows the Board to specify an employee as not being a participant. Nevertheless, the majority opinion concludes that Section 1.1.4 allows the Board to specify that Participants must relinquish their Participant status. This' interpretation *387 reads into the phrase “specify as being a Participant” a substantive Board power, 1.e., the ability to specify as not being a Participant, even after an employee has obtained Participant status. Section 1.1.4 neither states nor implies that the Board can remove a Participant without that Participant’s consent.

C. Extrinsic evidence surrounding the KESP

The extrinsic evidence further supports Habets’s interpretation of the KESP. The following facts arise from the summary-judgment evidence: (1) Getz’s August 1992 memo suggests that WMI needed to obtain waivers from Participants to terminate their KESP rights; (2) WMI obtained a written waiver from Allman, the only other employee whose KESP rights WMI terminated during the regional consolidation; (3) WMI sent several letters to Habets suggesting that WMI recognized Habets continued to have KESP rights after the regional consolidation, and that Habets needed to give consent for WMI to terminate those rights; (4) WMI’s earlier pleading states that Habets was a Participant “until the termination of the KESP by mutual agreement”;[2] and (5) WMI sought to secure consent from other Participants before terminating their KESP rights. These facts establish the inference that the KESP precluded the Board from unilaterally terminating Habets’s KESP rights.
WMI attempts to explain away these facts. Its explanations do not change the legal standard for summary judgment, however, that all inferences from underlying facts are to be drawn in favor of Habets. See Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Viewing this evidence in the light most favorable to Habets necessitates interpreting the KESP so that it precludes WMI from unilaterally terminating Habets’s KESP rights. Summary judgment should have been denied. I respectfully dissent.

. When asked if an employee's rights vest upon being listed on Exhibit 1, WMI answered affirmatively. After responding “Yes” to that question, WMI proceeded to assert that the Board could remove the Participant without consent. WMI is thus arguing that despite the fact that KESP rights vest when an employee is listed on Exhibit 1, the Board can unilaterally remove a Participant.

. Although a superceded pleading is not binding on a party under the judicial-estoppel doctrine, the court can still consider that pleading as rebuttable evidence. Borel v. United States Cas. Co., 233 F.2d 385, 387-88 (5th Cir.1956).